JOHN B. McHUGH v. CITY OF ST. PAUL.[1]

February 9, 1897.

Nos. 10,397—(170).

**City—Accident to Traveler.**

    A city is not ordinarily liable for an injury to a traveler while straying outside of an unfenced street, when the whole street is safe and convenient to travel upon.

**Same—Lighting Streets.**

    A city is under no obligation to light its streets, where they are safe and convenient for travel the whole width, unless the duty to do so is imposed by its charter.

Appeal by plaintiff from an order of the district court for Ramsey county, Egan, J., denying a motion for a new trial. Affirmed.

*Geo. C. Lambert*, for appellant. .

*E. J. Darragh*, for respondent.

BUCK, J. On March 22, 1895, and for many months prior thereto, Burgess street was a common thoroughfare in the limits of the city of St. Paul, upon which street, at the time of the injury complained of, the plaintiff was a resident. This street had been graded several years, and in places there was a filling of earth about 11 feet deep across a marsh, and it was at a point upon this filling or embankment where the accident occurred. The street was 60 feet wide, 34 feet between the gutters, which were 3 feet wide and 7 inches deep, and the ground leveled off 10 feet outside of the gutter for a sidewalk. The slope from the outer edge of the sidewalk to the bottom of the embankment, and down to the marsh, was 1 foot vertically to 1½ feet laterally. .

The plaintiff was a mail clerk, and also owned a grocery store in St. Paul, and on his way home he would occasionally stop at the house of one Mrs. McCusick, residing on the right-hand side of Burgess street, and get orders on his grocery store from her. On the night of the accident, March 22, 1895, the plaintiff was on his way

[1] Reported in 70 N. W. **5.**

home, driving along this street, and intended to stop at Mrs. McCusick's, and obtain an order from her for such groceries as she might want the next day, when his horse turned towards the house, as he supposed, and, stopping near the edge of the street, was, with the wagon and plaintiff, precipitated down the embankment, and plaintiff personally injured, and for this injury he brings this action. Upon the trial, and at the close of the evidence, the court dismissed the action, and plaintiff appeals.

The grounds of negligence alleged are (1) that the defendant city had neglected to build a fence or railing along the edge of this street, to prevent the traveling public from falling into the marsh; (2) that defendant neglected to furnish lights to enable travelers to avoid this dangerous place. There was no claim made that the street was improperly or unskillfully graded, or that the embankment was not properly constructed.

Plaintiff was perfectly familiar with the street and neighborhood, with the location of the house, and that it was near, or, as he testified, alongside of, the marsh. One of two things quite conclusively appears, viz. that he allowed his horse to go to the place of the accident unguided, or else that he drove the horse there himself. The undisputed evidence showed, by the wagon tracks, that, when nearly opposite the place of accident, his horse turned nearly at right angles with the highway, and in so doing, if he was in the traveled part of the road, he must have passed over the gutter, three feet wide, and the sidewalk, ten feet wide, before reaching the edge of the street, from which point he was precipitated down the embankment. There was no snow in the street, but some snow and mud in the gutter; but the stones in the gutter could be readily seen by daylight. Evidently he supposed that he was nearly opposite the house of Mrs. McCusick, his place of destination; but, in driving, or permitting his horse to turn, from the main track too soon, and allowing him to go too far, the accident occurred only a few feet from Mrs. McCusick's house.

The plaintiff's familiarity with the street, the McCusick house, and the embankment, and the manner in which the horse was managed, were important factors in the case, all of which were admitted; and all the facts appearing show conclusively that plaintiff was guilty of negligence in his conduct, resulting in being precipitated down the embankment, and which caused the injury. If he saw fit, on a

dark night, as this was, to encounter the risk of going with his horse and wagon to Mrs. McCusick's house, and thus pass beyond the limits of a properly and skillfully graded street, without any latent or patent defects in it, and the injuries received were beyond the line of such street, we do not think the city liable.

This court has already held, in the case of Miller v. City of St. Paul, 38 Minn. 134, 36 N. W. 271, that a city is under no obligation to light its streets, and a mere neglect to do so is not a ground of liability, unless the charter expressly imposes the duty. This is the general rule, and, if there are exceptions, the facts herein do not bring this case within the exception. Nor are towns necessarily bound to fence, or erect barriers, to prevent travelers from getting outside of the road or way. 2 Dillon, Mun. Corp. (4th Ed.) § 1005. The reason for the rule is well stated, in cases of this kind, in Sparhawk v. City of Salem, 1 Allen, 30, as follows:

"It appears that the highway in question was safe and convenient for travelers throughout its entire width, and the land adjoining it was also safe and convenient to travel upon. After getting entirely outside the highway in safety, the traveler must proceed still further in order to reach a dangerous place. If he reached that place, and was injured, the want of a railing was remotely, and not immediately, connected with the injury. If cities and towns are bound to protect travelers against such dangers, by erecting railings to prevent them from straying out of the highway, it is difficult to see the limit of their liability. In passing over an unfenced plain in the nighttime, the traveler might stray away from the road to a great distance, at the risk of the town, unless they fenced in their whole highway. Or he might, by mistake, enter a private way, or an open space, such as is often left about a farmhouse, or a large public common, or an unfenced forest, and hold the town responsible for any injury he might receive there, because they had not fenced against the private way, or open space, or common, or forest. Indeed, they would be liable to him for any injury he might receive from coming in collision with any building or structure in the city by straying beyond the limits of a street in the dark, unless they provided railings along all their public streets."

Considering the fact that Burgess street, in its entire width of 60 feet, was graded, and in good condition; that plaintiff was well acquainted with the neighborhood; that he turned his horse purposely, or allowed him to turn, at right angles with the street, and had to pass over the gutter and sidewalk before reaching the embankment, —and all the other attending circumstances, we are of the opinion

that the trial court was fully justified in directing a verdict for the defendant, and denying the motion for a new trial.

Order affirmed.